ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1914.

(Continued from Volume 186.)

JAMES L. PRICE, Respondent, v. R. M. DAVIS, Appellant.

**Kansas City Court of Appeals, January 11, 1915.**

1. **CONTRACTS: Damages: Employment.** The plaintiff instituted this action to recover compensation for services rendered defendant, and for damages for his wrongful discharge. Defendant was engaged in the brokerage business under a trade name and plaintiff was employed as the real manager of the business from October 1, 1907, to February 10, 1913, when he was discharged. *Held,* that under the circumstances shown by the evidence, plaintiff could recover compensation for his services.

2. ———: ———: ———. Where one is discharged from employment and afterwards offered re-employment by the same employer, if anything has occurred to render association between the parties offensive or degrading, or if the employee has engaged in any other employment incompatible with his return to the employer, he might reject the offer with safety without suffering diminution of his damages on the ground that it was an offer he should have accepted.

3. **PLEADINGS: Exceptions.** Where the petition states a good cause of action, the point that an issue not pleaded was liti-

gated at the trial relates to a matter of exception and will not be considered if not raised at the trial and properly preserved in the record.

4. **CORPORATIONS: Stockholders: Dividends.** The profits of a business belong to a corporation as an independent entity and not to its stockholders; and a stockholder who is employed as a manager of the corporation, does not derive his interest in the assets and profits of the corporation by virtue of his services rendered as manager for which his salary was to be his sole compensation, but from his investment in the capital stock as a stockholder.

Appeal from Buchanan Circuit Court.—*Hon. Wm. D. Rusk,* Judge.

AFFIRMED.

*W. B. Norris* for appellant.

*Culver & Phillip* for respondent.

JOHNSON, J.—This is a suit by a discharged employee for compensation for services rendered his employer and for damages resulting from his alleged wrongful discharge. Defendant was engaged in the merchandise brokerage business in St. Joseph, under the trade name of R. M. Davis Brokerage Company, which later was changed to the Davis-Price Brokerage Company, and plaintiff was employed as the real manager of the business from October 1, 1907 to February 10, 1913, when he was discharged.

The petition is in three counts. In the first it is alleged that on October 1, 1907, defendant employed plaintiff as salesman, buyer, solicitor and general office man for said business and "agreed to pay plaintiff for said services the sum of $100 per month and his necessary expenses up to April 1, 1910, after which date plaintiff was to receive his necessary expenses and $125 per month to the first day of June, 1911; that plaintiff rendered said services as agreed for the whole

time above stated and that there is yet due plaintiff on account of said services so rendered the sum of $226.90.''

In the second count plaintiff alleges that he was employed for one year from June 1, 1911; that defendant agreed to pay ''for his said services the sum of $125 per month and necessary and proper expenses . . . and in addition, to pay plaintiff for his said services an amount equal to one-fourth of the net profits arising from the operation and conduct of said business during said period;'' that plaintiff performed the services as agreed and that there was a remainder of $282.86 due him on account of salary and profits.

The contract alleged in the third count is that defendant employed plaintiff for a period of one year from June 1, 1912, and ''agreed to pay plaintiff for his said services so to be rendered a salary of one hundred and twenty-five dollars per month during said period of one year, and, in addition, to pay plaintiff for his said services an amount equal to one-half of the net profits earned during said time, after all expenses had been paid, said expenses to include a salary so to be paid plaintiff and a like salary of fifteen hundred dollars to be paid defendant. That it was also agreed in and by said contract that at the termination of said contract on the 31st day of May, 1913, an accounting should be had of the amount of the profits arising from the conduct of said business and that plaintiff should then be paid one-half of said net profits.''

It is alleged that pursuant to said contract, which was in writing, plaintiff ''faithfully rendered said services as agreed by him up to the 10th day of February, 1913, on which said last named date defendant, without any lawful cause or justification, discharged plaintiff and refused to permit him to continue in his said employment.'' Further it is alleged that plaintiff was paid $900 on account of salary, and ''that the net profits

earned in the conduct of said business up to the 10th day of February, 1913, were in excess of $5000, and that in addition there would have been large net profits earned if plaintiff had been permitted to continue to manage and conduct said business as agreed in said contract, that plaintiff has never been paid or received anything on account of said profits so earned and to be earned and that by reason of the breach of said contract by defendant, plaintiff has been damaged in the sum of $4000." No compensation for salary or expenses is claimed in this count and no reimbursement of expenses is demanded in either of the first two counts, the prayers of which are for the recovery of unpaid salary and profits.

Defendant filed an answer and a counterclaim in which he averred that during the employment alleged in the first count of the petition plaintiff overdrew his account in the sum of $545.02, and that during the second employment he was overpaid in the sum of $405.41. As to the third period the counterclaim alleges that plaintiff voluntarily abandoned the employment, established a brokerage business for himself in competition with defendant and that he "began by systematic method to undermine and destroy defendant's business and obtained a large number of customers and clients of defendant and by such action damaged defendant's business in the sum of $1000, and plaintiff collected a large sum of money which was due defendant and failed to account for the same for brokerage business obtained by the defendant, during the period between June 1, 1912 and February 10, 1913, to-wit: the sum of $400, by which said action on the part of plaintiff, defendant has been damaged in his said business in the sum of $1400, for which defendant asks judgment."

Defendant alleged in his answer "that since the 10th day of February, 1913, plaintiff has made the

sum of $125 per month, and the sum of $1000 as profits derived to plaintiff from his said business."

Finding that a trial of the issues of fact raised by the pleadings would require the examination of a large account, the court appointed a referee "to take the testimony and report his findings of fact and conclusions of law." After hearing the evidence the referee gave the following declarations of law asked by plaintiff:

"If the court finds that plaintiff was paid less than the amount of salary he was to receive and his necessary expenses incurred on account of the business for the period of his employment covered by the first count of the petition, to-wit, from October 1, 1907, to May 31, 1911, then he is entitled to recover on said account the difference between said amount and the amount he was to receive under his contract."

"If the court finds from the evidence that plaintiff received less than the amount of his salary and one-fourth of the net profits, and actual expenses incurred on account of the business during the period covered by the second count of the petition, to-wit: From June 1, 1911, to May 31, 1912, then he is entitled to recover the difference between said amount and the amount he was to receive under the contract."

"If the court finds from the evidence that plaintiff was improperly discharged by defendant while employed under the written contract introduced in evidence, then plaintiff is entitled to recover on the third count of the petition the difference between the salary he actually received from other employment and the salary he was to receive under said contract for the year beginning June 1, 1912, and ending June 1, 1913, less the amount he was actually paid by defendants on account of said salary; and in addition thereto, such necessary expenses, if any, as were actually expended by him on account of the business carried on; and that he is entitled to recover, further, such dam-

ages, if any, as he has suffered on account of the loss of his proportion of the net profits which he was to receive and would have received if he had been permitted to carry out said contract, less what, if anything, he actually received on this account."

The material portion, of the referee's report is as follows:

"In the first count plaintiff seeks to recover the balance due him for wages and expenses for a period beginning on the first day of October, 1907, and ending on the 31st day of May, 1911.

"In the second count plaintiff seeks to recover of defendant the balance due him for wages and expenses, including one-fourth of the profits for a period beginning on the first day of June, 1911, and ending on the 31st day of May, 1912.

"In the third count plaintiff seeks to recover of the defendant the balance for wages and expenses, including plaintiff's proportion of the profits due him for a period beginning on the first day of June, 1912, and ending on the 10th day of February, 1913, the date on which plaintiff claims to have been discharged by the defendant.

"The employment for the time covered by the first and second counts of the petition was verbal, while the employment for the period of time covered by the third count thereof was in writing, and said contract was introduced in evidence and is returned herewith to the court.

"The answer to said petition and each count thereof was a general denial and a counterclaim.

## FINDING OF FACTS.

There is no dispute about the employment having existed substantially as charged in each count of the petition.

During the first employment, that is from October, 1907, to May 31, 1911, plaintiff was to receive his expenses and a salary of $100 per month, and thereafter plaintiff claims he was to receive $125 per month as such salesman, solicitor and buyer. Defendant denies that plaintiff was to receive $125 per month from April 1, 1910, but admits that plaintiff's salary was raised about the first of January, 1911, to that sum.

The evidence, however, seems to bear out the contention of plaintiff, and I so find, from the evidence that plaintiff was to receive a salary of $125 per month, commencing April 1, 1910.

For the year beginning June 1, 1911, plaintiff was to receive $125 per month salary, his expenses and one-fourth of the net profits of the business.

For the period of one year, covered by the written contract, beginning June 1, 1912, plaintiff was to receive a salary of $125 per month and his expenses, and one-half of the net profits of the business.

Plaintiff charges, and I so find from the testimony that on February 10, 1913, the defendant, without any just cause, discharged the plaintiff from his employment, since which time he has received nothing from the defendant.

After the discharge of plaintiff the defendant, through an intermediary, requested or suggested that plaintiff return to his employment, but this plaintiff declined to do.

Plaintiff was instrumental in organizing a Missouri corporation with a capital of $2000 to carry on and conduct a general brokerage and mercantile business, similar in all respects to that carried on by the defendant.

This company began business on March 1 following the date on which plaintiff was discharged by the defendant.

Plaintiff was the general manager of this business from and after March 1, 1913, and received a salary of $125 per month from said new corporation.

He was the owner of five shares of capital stock of the company up to May 1, 1913, on which date he purchased nine additional shares of said stock.

The net profits of the business conducted by plaintiff after paying his salary up to July 19, 1913, amounted to from $800 to $1000.

## CONCLUSIONS OF LAW.

On the first count of the petition I find from all the evidence that under the terms of plaintiff's employment, ending May 31, 1913 he has been overpaid by defendant in the sum of $146.76.

That on the second count in the petition I find from all the evidence that there is a balance due plaintiff for salary, expenses and profits for the year ending May 31, 1912, of $278.82.

On the third count of the petition I find from all the evidence that under the contract plaintiff was to receive a salary of $125 per month or $1500 for the year ending May 31, 1913.

After his discharge and prior to the termination of his contract, on June 1, 1913, he was able to and did earn $375 as salary in a similar employment. And this sum should be deducted from the salary he was to receive under his contract, to-wit: $1500, leaving a balance of $1125 due plaintiff. He received, however, on account of salary $900 from defendant, leaving the net balance due him on salary for this period $225.

I further find that the business had been profitable up to the time of plaintiff's discharge, and that it had been growing more profitable ever since plaintiff entered the employment of the defendant. Plaintiff also is entitled to receive such moneys as were paid out by him prior to his discharge in the way of trav-

eling and other expenses incurred on behalf of the business.

I estimate the amount of these expenses and the damages suffered by plaintiff in the way of loss of net profits, occasioned by his discharge, to be $1000, making a total amount plaintiff should recover on the third count of the petition to be $1225.

I therefore find that defendant is entitled to judgment on the first count of the petition on his counterclaim against plaintiff in the sum of $146.76, and I so recommend.

That on the second count of the petition plaintiff is entitled to recover against defendant in the sum of $278.92, and I so recommend.

That on the third count of the petition plaintiff is entitled to recover against the defendant in the sum of $1225, and I so recommend."

Exceptions to the report were filed by defendant but were overruled and the court adjudged "that the report of said referee be and the same is hereby in all respects confirmed." Defendant excepted, and in due time, filed his motion for a new trial on the sole ground "that the court erred because it did not sustain the exceptions theretofore filed to said report, which said exceptions were overruled by the court." The motion was overruled and no motion in arrest of judgment was filed. Defendant appealed.

The first point argued by counsel for defendant is that since neither the second nor third counts of the petition alleged an indebtedness from defendant to plaintiff on account of expenses, the referee erred in considering such indebtedness as constituting a part of the pleaded causes and the court erred in rendering a judgment on the report which included such items. In the hearing before the referee the state of the expense account was treated as one of the issues presented by the pleadings and in his exceptions to the report of the referee, defendant did not except to the

inclusion of such items in the account in issue. A plaintiff must recover, if at all, upon his pleaded cause and on no other, and had defendant offered timely objection, and saved his exceptions to the investigation of an issue not raised by the pleadings, his point would be well taken. But the error in question was purely a matter of exception which could be, and was, waived by defendant.

The objection that the petition fails entirely to state a cause of action is not a matter of exception but of jurisdiction, and may be raised for the first time on appeal. But where the petition states a good cause the point that an issue not pleaded was litigated at the trial relates to a matter of exception and will not be considered if not raised at the trial and properly preserved in the record. [Shelton v. Franklin, 224 Mo. l. c. 356; Sheets v. Insurance Co., 226 Mo. 613; Land Co. v. Lumber Co., 136 Mo. App. l. c. 183; Thomas v. Scott, 221 Mo. l. c. 279; Hill v. Drug Co., 140 Mo. l. c. 438; Heffernan v. Ragsdale, 199 Mo. l. c. 382; Corrigan v. Kansas City, 93 Mo. App. 173.] As was pertinently observed in the Heffernan case ''Even if the pleadings were deficient the record shows that this was the sole issue tried. Appellant in the first instance introduced evidence upon this issue. All of this was done without objection, as if appellant fully understood that this was the issue tried. Under such circumstances it is too late to raise objections in this court.''

Where defendant at the trial accepts the petition as tendering a certain issue and contests that issue to judgment, he should not be heard in the appellate court to hark back and attack the sufficiency of the petition to support the judgment. The statute (section 2012, R. S. 1909) provides that ''all exceptions to the report of the referee shall be in writing and filed within four days, in term after the report is filed.'' Errors pertaining to matters of exception

which are not assigned in the exceptions filed to the report are waived (Buxton v. Debrecht, 95 Mo. App. 599) and cannot afford ground for disturbing the judgment in the appellate court.

Another section of the statute (2081) prohibits the consideration on appeal of exceptions which have not been expressly decided by the circuit court. Not only was it incumbent upon defendant to preserve the exception in question in his written exceptions to the report but he should have repeated it in his motion for a new trial. As is said by the Supreme Court in Blanchard v. Dorman, 236 Mo. l. c. 436, quoting from State v. Hottman, 196 Mo. 126: "It is now axiomatic that if a party desires this court to review any matter of exception on the trial, he must make his objection and save his exception at the time it occurs, and then repeat it in his motion for a new trial."

A motion for a new trial must set out the reasons therefor in a manner to direct the attention of the trial court to the precise errors of which complaint is made, and no reason not so stated shall be urged in support of the motion, or for a reversal of the judgment, in the appellate court. [State v. Scott, 214 Mo. l. c. 261; Machinery Co. v. Organ, 149 Mo. App. 102.] The motion in the present case specified no reason except the most general one that the court erred in not sustaining the exceptions filed to the report of the referee. If it might be said that the motion was good so far as the reasons stated in the filed exceptions were concerned, it certainly was not sufficient to preserve for review an error not assigned in such exceptions. We conclude that defendant waived the error under consideration and is in no position to complain of the allowance to plaintiff of reimbursement for money he advanced for expenses at the instance and request of defendant.

The next point raised by defendant is that in assessing damages for the wrongful discharge of plain-

tiff before the end of the term provided in the last contract, the referee erroneously took an accounting of the profits of the business for only that part of the year which had expired at the date of the discharge and not for the full term. It appears that the discharge of plaintiff resulted in converting a profitable into an unprofitable business, and it is argued that since the trial before the referee occurred after the close of the contract term, the net profits shown at the end of the term were the profits in which plaintiff was entitled to share. In the preliminary statement in his report the referee construed the issues pleaded in the third count as involving a demand for compensation "for wages and expenses including plaintiff's proportion of the profits due him for a period beginning on the first day of June, 1912, and ending on the 10th day of February, 1913, the date on which plaintiff claims to have been discharged by the defendant." But in the declarations of law given at the request of plaintiff the referee appears to have changed this view of the measure of damages in the statement of the rule that plaintiff "is entitled to recover, further, such damages, if any, as he has suffered on account of the loss of his proportion of the net profits which he was to receive and would have received if he had been permitted to carry out said contract less what, if anything, he actually received on this account." And in saying in his conclusions of law that the damages assessed on account of profits were "in the way of loss of net profits, occasioned by his discharge," the referee evidently was guided by the rule announced in the declarations of law and took into account, not only the accrued profits at the date of discharge, but the profits he found from the evidence the business would have earned had plaintiff been retained in the management. The evidence shows convincingly that the accrued profits at the date of plaintiff's discharge were in excess of the amount the referee must have

taken as the basis for his assessment of damages and that the subsequent losses were caused solely by the retirement of plaintiff from the management of the business. On the hypothesis that the discharge of plaintiff was wrongful he was entitled to recover compensation for the loss he incurred as a natural consequence of defendant's wrong. He was as much entitled to the opportunity, vouchsafed him by the contract, to earn profits as to earn salary, and in wrongfully depriving him of such opportunity defendant will not be heard to say to him "You must share the losses which were caused solely by my own wrong."

Since the evidence shows with certainty that the net profits at the end of the contract year would not have been less had plaintiff not been discharged than their amount at the time of his discharge and that they were in excess of the sum taken as the basis for the assessment, we fail to perceive any ground on which prejudicial error may be predicated of the fact asserted by defendant (if it were a fact) that the referee failed to take an account of the profits for the full term.

The third point argued by defendant is ruled against him on the authority of the decision of the Supreme Court in Lack v. Brecht, 166 Mo. l. c. 253, et seq.

Next it is argued that the referee erred in not deducting from the assessment of damages on the third count, the earnings of the business conducted by plaintiff after his discharge and during the remainder of the term for which he was employed by defendant.

The evidence shows that shortly after his discharge plaintiff organized a corporation of which he became manager at a salary of $125 per month, and which engaged at once in competition with the business of defendant. The capital stock of the corporation was $2000, of which plaintiff became the owner

of seven-tenths. From the time of its embarkation in business up to June 1, 1913, the corporation earned profits amounting to $800 or more. The referee refused to set off the share of such profits plaintiffs would have received had they been paid to the shareholders in dividends, but did deduct the salary plaintiff received from the corporation which was the same defendant would have paid him had he continued in the management of defendant's business. These rulings were proper expressions of the law of the case. The profits of the new business belonged to the corporation as an independent entity and not to its stockholders, and plaintiff's interest in the assets and profits of the corporation was derived not in virtue of the services rendered as manager for which his salary was to be his sole compensation, but from his investment in the capital stock as a shareholder. If he had invested his funds in some other business or loaned them on security the profits derived from such investment could not be deducted from the recoverable damages, and neither should they be so deducted because of the fortuitous circumstance that he invested his capital in the business of his employer.

Finally it is urged that the referee erred in not reducing plaintiff's damages under the finding of fact that "after the discharge of plaintiff the defendant, through an intermediary, requested or suggested that plaintiff return to his employment, but this plaintiff declined to do."

If it could be said that plaintiff should have accepted that offer his refusal could have no other bearing upon the issue of his recoverable damages than to reduce them, on the ground that he was able to secure similar employment to that from which he had been discharged. [Squire v. Wright, 1 Mo. App. 172; Heiferman v. Cloak Co., 145 N. Y. Sup. 142; Birdsong v. Ellis, 62 Miss. 418.]

The referee did not find that plaintiff had no cause for rejecting the offer or that the offer was made in good faith and, indeed, since defendant asked no declarations of law, we have no means of knowing that the referee did not treat the incident as mitigating the damages, but on the theory that he gave it no such effect, we find ample support for such ruling in the fact that in the quarrel between the parties which preceded the discharge things were said and done which would have tended to place an insuperable barrier between them and to make their further association in business unprofitable and degrading to plaintiff.

The rule in such cases, as stated in Birdsong v. Ellis, supra, is that "if anything had occurred to render further association between the parties offensive or degrading, or if the plaintiff had engaged in any other employment incompatible with his return to the defendant he might reject the offer with safety and without suffering diminution of his damages on the ground that it was an offer he should have accepted." If the wrong of the employer in discharging the employee is of such character that the parties could not be restored to their former relationship an offer of re-employment should not be construed as imposing upon the employee any obligation to accept it, and his refusal to accept such offer should not subject him to the penalty of a diminution of damages caused by his wrongful discharge.

There is no prejudicial error in the record. Affirmed. All concur.